IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal Case No. 1:21-cr-00533 (RDM) |
| | ) |
| RICARDO GLASS | ) |
| | ) |
| | ) |
| | ) |

DEFENDANT'S MOTION IN LIMINE TO
EXCLUDE SONGS, LYRICS, AND VIDEOS

SUMMARY

Defendant Ricardo Glass ("Mr. Glass"), prior to his arrest in this case, had achieved considerable commercial success as a hip-hop artist using the stage name "Baby Jamo." By age 17, his accomplishments included several popular songs,[1] several popular music videos,[2] and multiple collaborations with a well-known rapper in the Washington, DC hip-hop scene (one who later released a hit single with a Grammy-nominated artist).[3] Mr. Glass's songs had caught the eye of 300 Entertainment, now a division of Warner Music Group, who had planned to meet with Mr.

---

[1] At the time of this brief, Mr. Glass's song "warning" [sic] had been played over 113,000 times on Spotify.

[2] At the time of this brief, the most-watched music video in which Mr. Glass appears had achieved over 642,000 views on YouTube. See Baby Jamo, *Back Door Con Artist*, YOUTUBE (Jul. 2, 2020), https://www.youtube.com/watch?v=hck5SWTZe-I. Multiple others had achieved over 400,000 views. *See, e.g.*, Ben10 4K, *Baby Jamo - Pop Out ( Official Music Video) shot by @Ben10_4K* [sic], YOUTUBE (Jun. 1, 2020), https://www.youtube.com/watch?v=NYY9gZwub_4.

[3] Prior to his arrest in this case, Mr. Glass collaborated with the rapper "No Savage" on multiple tracks. *See, e.g.*, DMV Hits, *No Savage x Baby Jamo - Ready to Ride*, YOUTUBE (May 7, 2021), https://www.youtube.com/watch?v=Cmd9MOV3aOQ. No Savage worked with the rapper "Shy Glizzy," nominated for a Grammy Award for the song "Crew," on the track "Mood Switch." *See* No Savage x Shy Glizzy, *Mood Switch [Official Video]*, YOUTUBE (Sep. 1, 2021), https://www.youtube.com/watch?v=9uAkL0ZSvMw.

Glass in late August 2021 to discuss signing him to their record label; however, Mr. Glass was taken into custody days before the meeting was scheduled, and the meeting never went forward.

The Government, having already cited Mr. Glass's music in seeking to have him detained before trial, apparently plans to continue its attempt to use his music and music videos against him. In its memorandum supporting its motion for detention, the Government pointed to Mr. Glass's performances in three songs and accompanying music videos – "Special,"[4] "Switches,"[5] and "Trap."[6] The Government has signaled its intent to introduce these at trial in its case-in-chief, despite their minimal probative value, their explicit and intense content, and their tendency to suggest to a jury that Mr. Glass is a violent criminal with a propensity for using firearms. These videos are not documentaries, however, nor are these songs memoirs. If the Government wants to prove beyond a reasonable doubt that Mr. Glass knowingly possessed a machinegun, its investigation cannot be limited to browsing through Mr. Glass's music catalogue on Spotify and YouTube, and this Court should not sanction the Government's attempt to rely on it. For the following reasons, none of these songs or music videos should be introduced at trial.

## ARGUMENT

**I. The songs, videos, and lyrics are generally irrelevant to the charged conduct.**

The vast majority of Mr. Glass's songs, videos, and lyrics have no legitimate probative value in this case. Mr. Glass concedes the existence of a limited set of lyrics from his song "Switches" that, while inadmissible under Rules 403 and 404(b), nonetheless clear the low bar of

---

[4] Wax Bando, *DB Odog & Babyjamo - Special ( Official Video ) [sic] Dir. @WaxBando*, YOUTUBE (Jun. 30, 2021), https://www.youtube.com/watch?v=E1LsSLHaSIM.
[5] Magic Room Multimedia, *Baby Jamo x Quan - Switches (Official Video) Shot By @Blessltb*, YOUTUBE (Apr. 23, 2021), https://www.youtube.com/watch?v=khxrt1M7pGM.
[6] Baby Jamo, *Baby Jamo - Trap ( Official Video ) Dir. @Wax Bando,* YOUTUBE (Jul. 16, 2021), https://www.youtube.com/watch?v=vnJdNeL5DN0.

relevance by having probative value toward the question of whether he was familiar with the term "switches." Outside of these lyrics, however, no part of the songs, videos, or lyrics referenced in the Government's memorandum meet the requirement of making a material fact more probable.

> **a. The songs, videos, and lyrics have no probative value as to whether Mr. Glass possessed a firearm, or a specific type of firearm, at the time of the instant alleged offense.**

As Magistrate Judge Meriweather explained in the Order of Detention Pending Trial, the videos proffered by the Government "are not persuasive evidence that Mr. Glass was in possession of a machine gun." Indeed, the videos are not persuasive evidence that Mr. Glass was in possession of a firearm at all during the period of time charged in the indictment.

As the proponent of Mr. Glass's music and videos, the Government has the burden of showing that Mr. Glass's mention of firearms in his music, and his appearance in music videos alongside items that appear to be firearms, make it more likely that he possessed a machinegun on the morning of June 20, 2021. *See* Fed. R. Ev. 401. The Government has not met this burden.

First, the songs and videos do not show "identity" in any form. The Government has not shown that the specific firearm that it recovered from the trash can appears in Mr. Glass's videos or is discussed in Mr. Glass's songs. Moreover, the Government has not shown that any of Mr. Glass's videos contain *any* firearm with an auto sear switch. To allow the Government to introduce "Switches" to prove that Mr. Glass possessed an actual auto sear switch would be comparable to allowing the Government to introduce the Beach Boys song "Little Honda" to prove the Beach Boys' ownership of a Honda motorbike.

Absent identity, the Government may argue that the fact that Mr. Glass appeared among objects resembling firearms makes it more likely that he possessed an actual firearm, albeit one not depicted, at a different date. To make this argument, however, the Government would need to

show several additional facts: that the firearms depicted in the video were authentic, that Mr. Glass had access to them outside of the video shoot, and that access to the firearms depicted in the videos is probative of access to the type of firearm found in the garbage can. Absent these showings, this argument is simply a propensity argument, impermissible under Fed. R. Ev. 404(b).

> **b. The vast majority of the songs, videos, and lyrics have no probative value as to whether Mr. Glass would be able to recognize whether a firearm was a machinegun.**

While the Government may argue that the songs and videos are relevant to show Mr. Glass's knowledge of firearms, this argument fails as well. The firearms imagery in Mr. Glass's songs and videos do not show that he could visually distinguish between different types of firearms any more than the use of firearms in a movie shows that its actors could. Mr. Glass's occasional reference to "Glocks," and even less frequent reference to "switches," do not show that he could identify whether a firearm in his possession had automatic capabilities. Unless the Government can substantiate them with additional facts, prior instances of the artistic depiction of firearm possession, by Mr. Glass or by others, are irrelevant to the criminal charge of firearm possession.

Mr. Glass acknowledges this Court's statement that some of the videos referenced in the Government's initial memorandum "support the Government's contention that Defendant knew that the trigger mechanism on the firearm at issue enabled automatic firing," as well as the statement of Magistrate Judge Meriweather that the content of some of his music videos "suggest that he had an understanding of the differences between ordinary firearms and those that are classified as machine guns under the law." Nonetheless, the evidence shows nothing more than that Mr. Glass knew that a "switch" was something with which a gun might be outfitted – a far cry from being able to identify one. To continue the previous example, while the song "Little Honda" would be relevant evidence to show that the Beach Boys understood that a Honda motorbike had

multiple gears, it would hardly suffice as evidence to show that they could distinguish a two-stroke engine from a four-stroke engine.

In short, nothing in the lyrics of "Special," "Trap," or "Switches," and no conduct in which Mr. Glass partakes in the videos for these songs, suggests that Mr. Glass would be able to actually visually distinguish a firearm equipped with a switch from one not so equipped.

### c. The songs and videos contain content not fairly attributable to Mr. Glass.

In order for the music videos in which Mr. Glass appears to be relevant, the Government must show that they tend to make a material fact in the case more likely. These songs and music videos, however, contain a great deal of content that is not fairly attributable to Mr. Glass and is thus irrelevant.

To begin, multiple rappers provide verses for both "Special" and "Switches." There is absolutely no reason to believe that Mr. Glass had any input into these other performers' verses. Their verses, and the portions of the music videos in which their performance is central, are irrelevant in Mr. Glass's case.

Nor do the visual components of the music videos for "Special," "Switches," and "Trap," without more information, provide any insight into any element of the Government's case. Simply put, the Government has not shown that any of this content is fairly attributable to Mr. Glass. Indeed, the videos' credits make clear the responsible parties for the videos' visual content:

- "Switches," which features both Mr. Glass and the rapper "Quan," provides the credit "Shot by @Blessltb" as well as a credit for "Magic Room Multimedia." The video was uploaded to YouTube by a user named "Magic Room Multimedia."

- "Special," which features both Mr. Glass and the rapper "DB Odog," provides several credits to "WAXBANDO" ("Directed by WAXBANDO," "Camera Operated by WAXBANDO," "Edited by WAXBANDO") and one to "NUMBER6IXTEEN." ("Produced by NUMBER6IXTEEN"). The video was uploaded to YouTube by a user named "Wax Bando."

- "Trap," which features Mr. Glass, credits "TRAPDANNY" and "MAXOBEATZ" in its opening seconds and provides directorial credit to "WAXBANDO." The video was uploaded to YouTube on Mr. Glass's YouTube account.

Without showing that Mr. Glass himself had a hand in selecting the visuals in the music videos in which he appears – including the inclusion of items that resemble firearms – these visuals have no probative value whatsoever as to whether Mr. Glass possessed a firearm at a later date. *Cf. United States v. Smith*, 967 F.3d 1196 (11th Cir. 2020) (permitting introduction of defendant's music video where defendant served as videographer and defendant personally edited video).

### d. Evidence postdating Mr. Glass's arrest is not relevant.

Two of the three songs and videos cited by the Government – "Special" and "Trap" – were released well after Mr. Glass's arrest on June 20, 2021.[7] As the Government's arrest reports state, the firearms in question were confiscated on June 20, 2021 – meaning that they could not possibly appear in a video filmed at a later date. Unless the Government can show that some relevant portion of these songs and videos were written and produced not only prior to their release, but prior to the incident in question, they have zero relevance to the questions of whether Mr. Glass possessed the firearm in question and whether he could identify an auto sear switch at the time of the alleged offense.

Additionally, on June 20, 2021, Mr. Glass was charged with the criminal offense of carrying with a Glock pistol with an auto sear switch. This act would have provided Mr. Glass with knowledge of a switch, such that later evidence of his knowledge of the existence of "switches" would not suggest knowledge from an independent source. References that Mr. Glass

---

[7] The video for "Special" was uploaded to YouTube on June 30, 2021; the album on which "Special" appears was uploaded to Spotify on July 21, 2021. The video for "Trap" was uploaded to YouTube on July 16, 2021; the album on which "Trap" appears was uploaded to Spotify on October 5, 2021.

made to "switches" following his charges for possessing a firearm equipped with "switches" – charges of which he would have been fully aware – do not make it "more . . . probable" that he could have identified switches *prior* to the charges, nor do they show his actual knowledge of how firearms work following being charged with carrying a Glock with an auto sear switch.

**II. Mr. Glass's songs, videos, and lyrics should be excluded under Rule 403.**

Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Ev. 403. The low probative value of these songs and videos is substantially outweighed by the factors with which Rule 403 is concerned.

Even if the Court finds that the aforementioned songs, videos, and lyrics are relevant under Rule 401, their probative value is extremely low for the reasons mentioned above – their relevance rests on an unstable foundation of numerous unknown factors, and the link between the songs and videos and the actual firearm found in the garbage can is weak at best. At best, the legitimate probative value of Mr. Glass's songs and videos is limited to the fact that he has some knowledge about "Glocks" and "switches" and has been in the presence of items that look like firearms. On the other hand, requiring a jury to listen to Mr. Glass's music or watch the music videos in which he appears could "evoke exactly the type of fear and emotional response that Rule 403 seeks to avoid." *United States v. Rosario-Peralta*, 199 F.3d 552, 565 (1st Cir. 1999).

Mr. Glass's music, and the music videos in which he appears, are characterized by menacing instrumentation, nihilistic lyrics, unsettling imagery, and an overall lurid style.[8] Indeed,

---

[8] Indeed, Mr. Glass's music has been lauded for these precise features. One reviewer emphasized that Mr. Glass's track "Fox 5 Gang" "will leave your heart racing with its pounding bass and pulsing alarms . . . It's some of the most claustrophobic music coming out of the DMV right now. Baby Jamo can make any song feel as intense as the bomb defusing scene in a James Bond movie." Brandon Callender, "The Rap-Up: Week of May 17, 2021," PASSION OF THE WEISS (May 17,

one intended purpose of the overall aesthetic of the subgenre of hip-hop that Mr. Glass specializes in is to invoke fear and intimidation by showing off the power and prowess of the rapper and his companions. See, e.g., Jack I. Lerner & Charis E. Kubrin, Rap on Trial: A Legal Guide for Attorneys ("A common theme in rap is hyper-masculine posturing, and rappers portray hypermasculinity through their self-image and the messages communicated through their lyrics."). Preventing this type of effect on an audience, especially when largely irrelevant to the case at hand, is at the heart of Rule 403. *See United States v. Washington*, 962 F.3d 901 (highlighting judge's exclusion of rap music video from trial "to avoid its most inflammatory and irrelevant features"); see also Lerner & Kubrin (noting the "implicit fear and bias activated by rap as a genre").

Instances that could cause unfair prejudice include, but are certainly not limited to, the following moments:

- Mr. Glass, smiling at the camera, makes a motion with his hands as if shooting the viewer with a firearm. (video for "Special," 0:11)

- Mr. Glass, grimacing and staring into the camera, makes a motion with his hands as if shooting the viewer with a firearm (video for "Special," 1:09)

- Mr. Glass displays, flauntingly, a large amount of cash. (video for "Switches," 0:11)

- A participant aims what appears to be a firearm at the viewer (see, inter alia, video for "Special," 0:07, 0:09, 1:37; video for "Switches," 2:22; video for "Trap," 1:02)

- Computer-generated images of bullets fill up the screen. (Video for "Switches," 0:21)

- A computer-generated image of a firearm fills up the screen and appears to "ignite" as it is fired. (Video for "Switches," 0:24)

- Two individuals shove their fists, with middle fingers raised, in front of the camera. (video for "Trap," 0:03)

- A young woman performs a sexually suggestive dance. (Video for "Trap," 0:15)

---

2021), https://www.passionweiss.com/2021/05/17/the-rap-up-week-of-may-17-2021 (last accessed March 18, 2022).

- Mr. Glass references "carjack[ing]." ("Special," 0:53).

- Mr. Glass says, "You ain't shot at me, I shot at you," and motions to the camera as if shooting at the viewer. (Video for "Trap," 0:30; line repeated at 1:44)

- Mr. Glass raps, "You f*** on a b**** and he ain't got no socks on." (Video for "Trap," 0:34).

- Mr. Glass makes the threat, "You come through and we flushin' your whip," while multiple people around him mime shooting a firearm at the viewer. (video for "Special," 2:03)

What a juror is most likely to take away from these lyrics and visuals is not legitimate evidence as to whether Mr. Glass possessed a firearm on June 20, 2021, or whether, if in fact he possessed a firearm on that date, he knew that it was a machinegun. Instead, the most obvious takeaway is that Mr. Glass is part of a group of young men that collectively engage in a violent and criminal lifestyle and are ready to use violence – including gun violence – against anyone they perceive as a threat.

The unfairness of this effect is compounded by the lack of *any* showing as to the degree to which Mr. Glass was responsible for the videos' actual content. All three videos give production-related credit to various other individuals rather than Mr. Glass, and the Government has not shown that Mr. Glass so much as *wrote the lyrics* to these songs, let alone had any hand in the videos beyond his own performance. Indeed, standing alone, these songs and videos raise far more questions than answers. The songs and lyrics by themselves lack essential context required for a jury to fairly evaluate the evidence, such as answers to the following questions:[9]

- which of the lyrics, if any, were written by Mr. Glass himself;

- when Mr. Glass wrote such lyrics (if indeed he wrote any of them); and

---

[9] These issues could also be characterized as relating to conditional relevance under Rule 401, as well as unfair prejudice and confusing the issues under Rule 403.

- which (if any) of the lyrics were meant to be an accurate depiction of Mr. Glass's own life, rather than exaggeration or fabrication.

Introduction of the videos would raise all of the questions above, as well as:

- whether the firearms depicted in the video were authentic or instead simply props;

- whether the firearms were equipped with "switches" (and, if so, whether those were authentic);

- what knowledge Mr. Glass had about the firearms in the video, including whether they were authentic and whether they were equipped with "switches";

- which (if any) of the directorial choices were made by Mr. Glass, including the presence, selection, and imagery of firearms;

- whether the firearms were illegally possessed; and

- whether Mr. Glass had access to any of the firearms in the video, whether authentic or not, outside of the video shoot.

While the probative value of Mr. Glass's songs and videos depends on these factors, their unfair prejudicial effect does not. A juror, upon hearing these lyrics and seeing these videos, might assume that Mr. Glass himself is dangerous, regardless of whether he is guilty beyond a reasonable doubt of the specific crimes charged in the indictment.

Prohibiting the Government from using Mr. Glass's music would still leave open a number of different categories of evidence. The Government could show Mr. Glass's knowledge by introducing, for example, phone conversations, text conversations, witness testimony, statements of Mr. Glass himself, and statements made by others to Mr. Glass. *See, e.g.*, *United States v. Ruiz*, 253 F.3d 634, 639 (11th Cir. 2001) (defendant's previous statement indicated his knowledge of firearm's characteristics); *United States v. Gergen*, 172 F.3d 719, 725 (9th Cir. 1999) (defendant's method of handling of firearm indicated his knowledge of firearm's characteristics); *United States v. Gravenmeir*, 121 F.3d 526, 529 (9th Cir. 1997) (conversation with defendant explaining firearm's characteristics, defendant's subscription to machinegun magazines, defendant's

possession of book describing how to convert weapons to automatic, and defendant's ownership of firearm conversion tools all indicated his knowledge of firearm's characteristics). Given the numerous alternative methods of proving knowledge, it would be unfair to penalize Mr. Glass by permitting the Government to instead introduce evidence that is both far less probative and far more unfairly prejudicial.

### III. The songs, videos, and lyrics are impermissible character evidence.

Federal Rule of Evidence 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Ev. 404(b)(1). While such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," Fed. R. Ev. 404(b)(2), "the court must scrutinize Rule 404(b)(2) . . . evidence to assess the risk of unfair prejudice. . . because even if the evidence does not create unfair prejudice solely because it rests on propensity, it may still risk a decision on the basis of something like passion or bias—that is, an improper basis." *United States v. Miller*, 688 F.3d 322, 327 (7th Cir. 2012).

To show a purpose that is proper under Rule 404(b), the Government must "proffer a logical chain of inference consistent with its theory of the case," *United States v. Sampson*, 980 F.2d 883, 888 (3d Cir. 1992). The Government "must clearly articulate how that evidence fits into a chain of logical inferences, no link of which can be the inference that because the defendant committed [the same type of] offenses before, he therefore is more likely to have committed this one." *United States v. Lopez*, 340 F.3d 169, 173 (3d Cir. 2003) (citing *Sampson*, 980 F.2d at 887).

Evidence showing a person's previous relationship with firearms, when offered to demonstrate a "character" for possessing or carrying firearms, is inadmissible under Rule 404(b).

*See United States v. Williams*, 458 F.3d 312, 314 (3d Cir. 2006) ("Because the only purpose for which Williams sought to introduce Urlin's prior conviction was to show that he has a propensity to carry firearms, the District Court correctly excluded the evidence.").

Here, the "chain of inference" from Mr. Glass's videos and music is obvious. A juror, upon seeing Mr. Glass alongside others holding what appear to be firearms, and upon hearing Mr. Glass posturing to be someone who is willing to use a pistol and who "play[s] with . . . switches," might improperly assume that he would in fact have a propensity to carry firearms, including firearms equipped with "switches."

While the Government may proffer non-propensity intentions with this evidence, any non-propensity purpose is substantially outweighed by the tendency of this evidence to show propensity. As discussed, the probative value of the songs and videos is arguably zero and at most minimal. The Government has not shown that the videos contain the actual firearm found by the Government or even actual auto sear switches, nor that the songs demonstrate Mr. Glass's ability to recognize whether a firearm in his possession was equipped with an auto sear switch. The Government may argue that these songs and videos demonstrate Mr. Glass's "knowledge" about firearms, but Mr. Glass's general awareness, and even apparent affinity for, Glock pistols and switches does not demonstrate his specific knowledge about what an auto sear switch looks like – similar to how Eric Clapton's song "Cocaine" demonstrates his knowledge of cocaine as a drug but does not make more likely that he could distinguish visually between cocaine powder, crack cocaine, or even baking soda. Even if any portion of the songs, videos, and lyrics does have some legitimate evidentiary value, that value is substantially outweighed by the danger that the jury will use them as evidence of Mr. Glass's propensity to possess and use firearms.

## CONCLUSION

For the foregoing reasons, the government should be prohibited from introducing "Special," "Switches," and "Trap" in any form – including the songs themselves, the music videos for the songs, and the song lyrics – at trial.[10]

Dated: March 18, 2022

                                                  Respectfully submitted,

                                                    /s/ Timothy H. Lyons
                                                  Joshua Berman (DC Bar No. 489751)
                                                  Glen Donath (DC Bar No. 460582)
                                                  Timothy Lyons (DC Bar No. 1048991)
                                                  Clifford Chance US LLP
                                                  2001 K Street NW
                                                  Washington, DC 20006
                                                  Tel: (202) 230-2231
                                                  timothy.lyons@cliffordchance.com

                                                  *Counsel for Ricardo Glass*

---

[10] If the Government moves to introduce songs, lyrics, or videos other than "Special," "Switches," and "Trap," Mr. Glass objects to the introduction of these, for substantially the same reasons as listed above.